IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00120-PAB

RYLEE AND CRU, INC., a California corporation,

    Plaintiff,

v.

HUI ZHU, an individual, and
RYLEE-CRU.COM,

    Defendants.

---

**ORDER**

---

This matter comes before the Court on that portion of plaintiff Rylee and Cru, Inc.'s *Ex Parte* Application for Temporary Restraining Order and OSC Re Preliminary Injunction [Docket No. 2] that seeks a temporary restraining order ("TRO"). No defendant has responded to plaintiff's TRO motion. The Court has jurisdiction over the case under 28 U.S.C. §§ 1331 and 1338(a).

**I. BACKGROUND**

The application for a TRO alleges the following: Plaintiff Rylee and Cru, Inc. ("R&C") is a clothing company that sells its products on its website, which is found at www.ryleeandcru.com. Docket No. 2 at 9. R&C owns the registered trademark "RYLEE + CRU." *See* Docket No. 1-2 at 7 (registration with the United States Patent and Trademark Office). R&C alleges that defendants have been selling counterfeit R&C merchandise on a fraudulent website, found at www.rylee-cru.com. Docket No. 2 at 2-3; *see also* Docket No. 1 at 9, ¶ 24. R&C claims that defendants' website is a "lookalike

online store" with the same visual appearance as R&C's website and which features copyrighted product images from R&C's catalogues. Docket No. 2 at 10-12. Defendants' website is registered through the domain name registrar Name.com, Inc. *Id.* at 2. According to R&C, defendant Hui Zhu registered the domain name www.rylee-cru.com using an email address and a physical address located in China. *Id.*; *see also* Docket No. 1-1 (registration information for rylee-cru.com retrieved from "Whois" domain information database). R&C sent a cease and desist email to defendant Hui Zhu and also notified Name.com that Name.com was hosting an infringing website, but R&C received no response to these communications by the time it filed the motion seeking a temporary restraining order. Docket No. 2 at 2. R&C's complaint against defendants states claims for cybersquatting, copyright infringement, and trademark infringement. Docket No. 1 at 12-19.

R&C argues that the Court should issue a TRO because it is likely to succeed on the merits as to each of its claims, the trademark claim carries a presumption of irreparable injury to R&C, defendant Hui would face no hardship, and the public will be protected from consumer confusion and fraud. Docket No. 2 at 14-20. R&C asks the Court to order defendant Hui and Name.com to: (1) "takedown [sic] and render inaccessible the site at www.rylee-cru.com, leaving it an unresolved page," (2) transfer the fraudulent domain to R&C, (3) "provide any additional contact information relating to the registrant of www.rylee-cru.com, including any additional contact information relating to the individual Defendant named Hui Zhu," and (4) "identify any additional domain names containing the terms 'Rylee' and 'Cru' and registered under their control," shut them down, and transfer the domains to R&C. Docket No. 2-3 at 1-2. R&C further

seeks to enjoin Mr. Hui from "register[ing], us[ing], or post[ing] content to any domain name containing the phrase "Rylee Cru" or any variation of that phrase."  *Id.* at 2.  Finally, R&C asks the Court to authorize service of process on defendants by email.  *Id.*

## II. LEGAL STANDARD

To succeed on a motion for a temporary restraining order, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 US. 7, 20 (2008)); *see also Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted).  Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989), "is the exception rather than the rule."  *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).  The same considerations apply to the issuance of a temporary restraining order.  *See Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

## III.  FACTORS FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER

The Court will consider whether R&C has satisfied the four factors for issuance of a temporary restraining order.[1]

### A. Likelihood of Success on the Merits

As noted above, R&C's complaint includes claims for trademark infringement, cybersquatting, and copyright infringement.

To succeed on a trademark infringement claim, a plaintiff must demonstrate the following: "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant used 'an identical or similar mark' in commerce; and (3) that the defendants' use is likely to confuse customers."  *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (citations omitted); *see also Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research,* 527 F.3d 1045, 1050 (10th Cir. 2008).  R&C registered the mark "RYLEE + CRU" with the U.S. Patent and Trademark Office in 2017.  Docket No. 1-2 at 7.  R&C's registration of the mark "serves as prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce."  *1-800 Contacts,* 722 F.3d at 1238 (citing 15 U.S.C. § 1115(a)).

R&C claims that rylee-cru.com "prominently uses the registered trademark . . . throughout its homepage and subpages," which R&C claims is "likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection[,] or association of Defendant's [sic] with Plaintiff."  Docket No. 1 at 17.  The screenshots

---

[1]The Court issued a Minute Order on January 18, 2023, emailed to defendants at the email address at which defendant Hui registered defendant Rylee-Cru.com, ordering them to respond to that portion of Docket No. 2 seeking a temporary restraining order. Defendants did not file a response by the deadline.  The Court sees no reason to hold a hearing on the motion for a temporary restraining order.

that R&C provides of defendants' website show that each page is topped with a header reading "Rylee + Cru," written in stylized script.  *See generally* Docket No. 1-6.  These headers are nearly identical to the ones on R&C's website.  *See generally* Docket No. 1-7.  The screenshots also show that each caption below the images of clothing for sale begins with the phrase "Rylee + Cru."  *See generally* Docket No. 1-6.  Because these screenshots show that defendants are using an identical or a similar mark to R&C's registered mark, RYLEE + CRU, to sell clothing, R&C has demonstrated that it is likely to establish the second element of its trademark claim against defendants.

The third element of a trademark claim involves likelihood of confusion.  The Tenth Circuit recognizes six "helpful, nonexhaustive factors for determining likelihood of confusion: (1) similarity of the marks, (2) intent of the alleged infringer, (3) evidence of actual confusion, (4) similarity of the competing parties' services and manner of marketing, (5) degree of consumer care, and (6) strength of the marks."  *1-800 Contacts,* 722 F.3d at 1243 (citation omitted).  As described above, R&C's screenshots show that rylee-cru.com features the words "Rylee + Cru" at the top of each page and in the captions of the images of clothing.  *See generally* Docket No. 1-6.  These words are identical or similar to R&C's mark, RYLEE + CRU, and weigh in favor of defendants' use of the words creating a likelihood of consumer confusion.  Furthermore, rylee-cru.com purports to sell clothing online, just like R&C's website, and defendants appear to intend for customers to believe they are purchasing genuine goods from R&C.  R&C has not provided evidence of actual confusion or addressed the degree of consumer care or the strength of the mark.  However, R&C's showing on the other three factors is sufficient to demonstrate the likelihood of customer confusion.

In sum, R&C has demonstrated that it has a protectable interest in the mark, that defendants are using the mark in connection with the sale of goods, and that consumers are likely to be deceived into believing that the defendants' website is affiliated with R&C.  Accordingly, R&C is likely to succeed on its trademark infringement claim.

R&C's complaint includes two claims under the Anti-Cybersquatting Consumer Protection Act ("the Act").  Docket No. 1 at 12-13, 19.  R&C brings one of these claims in rem against rylee-cru.com.  *Id.* at 19.  The Act permits in rem actions against a domain name that violates the rights of a trademark owner.  15 U.S.C. § 1125(d).  However, such an action requires that the trademark owner is either (1) unable to obtain in personam jurisdiction over a person who registered, trafficked in, or used the infringing domain name, or (2) unable to find such person.  15 U.S.C. § 1125(d)(2)(A).  R&C has not demonstrated that it is entitled to bring an in rem action against rylee-cru.com on either of these grounds.  Therefore, R&C has not demonstrated a likelihood of success on the merits of its in rem action against rylee-cru.com.  The Court will next consider R&C's cybersquatting claim against defendant Hui.

To prevail on a cybersquatting claim, a plaintiff must demonstrate: "(1) that its trademark . . . was distinctive at the time of registration of the domain name, (2) that the domain names registered by [defendant] are identical or confusingly similar to the trademark, and (3) that [defendant] used or registered the domain names with a bad faith intent to profit." *Utah Lighthouse Ministry,* 527 F.3d at 1057.  R&C alleges the distinctiveness of its trademark and that it owns the mark "RYLEE + CRU."  Docket No. 2 at 9, 16.  To satisfy the first element of its cybersquatting claim, R&C must demonstrate that it already owned the trademark when it registered the domain name

6

or, alternately, that the elements that made the mark distinctive for trademark purposes were in effect at that time that it registered the domain name even though it had not yet registered the trademark. *See Utah Lighthouse Ministry*, 527 F.3d at 1057 (denying plaintiff's cybersquatting claim because it did not meet its burden to prove trademark infringement and did not submit evidence that its mark was distinctive at the time it registered its domain name even though it had not registered a trademark at that time). Because R&C has failed to show this element, R&C has not demonstrated a likelihood of success on the merits for its cybersquatting claim.

To succeed on a copyright infringement action, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). R&C states that it holds the copyright to the original artwork and photographs of clothing depicted in its catalogs. Docket No. 1-9 at 2. R&C has submitted screenshots of defendants' website that show the website uses identical or substantially similar images to the original copyrighted images from R&C catalogs, demonstrating the likelihood of plaintiff being able to satisfy both elements of a copyright claim. Docket No. 1-10; *see also* Docket No. 1-8 (R&C's catalog images). Thus, R&C has demonstrated the likelihood of success on its copyright claim.

### B. Irreparable Harm

Under the 2020 Trademark Modernization Act, a plaintiff seeking a temporary restraining order on the basis of trademark infringement "shall be entitled to a rebuttable presumption of irreparable harm upon . . . a finding of likelihood of success on the

merits." 15 U.S.C. § 1116(a).  Because R&C has demonstrated a likelihood of success on the merits of its trademark claim, it is entitled to the presumption of irreparable harm as to its trademark claim.

Separately from the presumption of irreparable harm, R&C argues that failure to issue a temporary restraining order will cause irreparable harm to its goodwill as a result of continued trademark infringement.  Docket No. 2 at 18-19.  The court in *Bikinvention* held that the sale of counterfeit goods can "diminish the [authentic] brand in ways that [the brand] will find difficult to correct."  *Bikinvention 2 CC v. Squirt, LLC,* No. 14-cv-01178-CMA-MEH, 2014 WL 1758142, at *3 (D. Colo. May 2, 2014) (finding that failure to issue a TRO against a counterfeiter selling goods of inferior quality would cause irreparable harm to plaintiff's goodwill).  R&C's allegation that defendants' website is selling counterfeit goods further supports its argument that R&C will suffer irreparable harm in the absence of a temporary restraining order.  Docket No. 2 at 3; *see also* Docket No. 1 at 9, ¶ 24.

In terms of R&C's copyright claim, the Tenth Circuit has recognized a "presumption of injury at the preliminary injunction stage once a copyright infringement plaintiff has demonstrated a likelihood of success on the merits."  *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288-89 (10th Cir. 1996).  Because R&C has demonstrated a likelihood of success on the merits of its copyright claim, the Court finds that it is entitled to this presumption.

Accordingly, the Court finds that R&C has satisfied this prerequisite to issuance of a temporary restraining order as to its trademark and copyright claims.

### C. Balance of Equities and Public Interest

R&C alleges that the defendants are "not authorized to sell any authentic RYLEE + CRU® goods and [have] no actual affiliation with R&C or its legitimate brand." Docket No. 2 at 19. The public has an interest in avoiding the customer confusion that can result from trademark infringement. *See, e.g., Century 21 Real Estate LLC v. All Prof'l Realty, Inc.,* 2011 WL 221651, *13 (E.D. Cal. Jan. 24, 2011) ("In the trademark context, the public interest is usually the right of the public not to be deceived or confused") (citing *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.,* 559 F.3d 985, 993-94 (9th Cir. 2009)). Furthermore, a defendant "faces no hardship in refraining from willful trademark infringement." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006).

A similar analysis applies in the copyright context. The Tenth Circuit has held that the public interest factor "normally weighs in favor of the issuance of an injunction because the public interest is the interest in upholding copyright protections." *Autoskill Inc. v. National Educational Support Systems, Inc.*, 994 F. 2d 1476, 1499 (10th Cir. 1993) (*overruled on other grounds*). In *Autoskill*, the Tenth Circuit upheld the district court's finding that the burden on an alleged infringer did not outweigh the harm suffered by the copyright holder, endorsing the view that "the potential injury to an allegedly infringing party caused by an injunction 'merits little equitable consideration and is insufficient to outweigh the continued wrongful infringement.'" *Id.* at 1498 (quoting *Georgia Television Co. v. TV News Clips of Atlanta, Inc.*, 718 F. Supp. 939, 949 (N.D. Ga. 1989)). Therefore, the balance of hardships and the public interest weighs in favor of granting a temporary restraining order as to both R&C's trademark and copyright claims.

Accordingly, R&C has shown entitlement to a temporary restraining order under all four factors concerning its trademark and copyright claims.

## IV. SCOPE OF THE ORDER[2]

### A. Court's Ability to Bind Name.com

R&C asks that "the Court's order. . . expressly state that it applies to the Registrar of the Infringing Site, Name.com, Inc., and to any other relevant registrar and domain authority, whether named or not in this lawsuit." Docket No. 2 at 20. To support this argument, R&C points to that portion of Federal Rule of Civil Procedure 65 that permits courts to bind "other persons who are in active concert or participation" with the parties or their agents, servants, employees, or attorneys. Fed. R. Civ. P 65(d)(2)(C). It is true that some federal courts have enjoined nonparty domain name registries under this rule. *See DISH Network, L.L.C. v. Dima Furniture Inc.,* 2019 WL 2498224, at *9 (D. Md. June 17, 2019), *report and recommendation adopted*, 2019 WL 5588901 (D. Md. July 12, 2019); *TVB Holdings (USA), Inc. v. HTV Int'l LTD.,* 2018 WL 7076022, at *7-8 (E.D.N.Y. March 9, 2018*); Triangl Grp. Ltd. v. Jiangmen City,* 2017 WL 2829752, at *11 (S.D.N.Y. June 22, 2017). However, these cases involved permanent injunctions (many issued through default judgments), not TROs.

How Rule 65(d)(2)(C) should be applied to domain name registrars was discussed in *BMW of North America, LLC, v. Issa,* 2020 WL 1325278 (D. Utah Mar. 20,

---

[2] R&C has named both Hui Zhu and the rylee-cru.com as defendants on the basis that Section 1125 permits in rem actions against domains that violate cybersquatting law. *See* Docket No. 1. However, as discussed above, R&C has not demonstrated that it is entitled to bring an in rem action against rylee-cru.com under the cybersquatting statute. 15 U.S.C. § 1125(d). Therefore, the Court will grant the temporary restraining order only as it applies to defendant Hui Zhu.

2020). In that case, plaintiffs sought a permanent injunction, not only against the defendants, who owned a website that allegedly violated copyright, trademark, and cybersquatting laws, but also against nonparty domain name registrars. *Id.* at *2. The court declined to enjoin the registrars under Rule 65 in part because plaintiffs failed to show that the registrars aided and abetted the defendant in violating the law or in evading the previously issued TRO. *Id.* at *6. The *BMW* court likened the registrar issue to a similar issue decided by the Seventh Circuit in *Blockowicz v. Williams,* 630 F.3d 563 (7th Cir. 2010). In *Blockowicz*, the plaintiffs asked the court to order nonparty website hosts to remove defendants' defamatory posts pursuant to Rule 65. *Id.* at 564. Plaintiffs claimed that the website hosts were "in active concert or participation" with the defendants because they failed to remove the defamatory posts. *Id.* at 564. The *Blockowicz* court, finding the hosts' failure to act insufficient, concluded that "Rule 65(d)(2)(C) is not broad enough to bind [the web hosts] to the terms of this injunction in light of their inactivity." *Id.* at 564, 569.[3]

     R&C has not alleged that Name.com has taken any action that could be considered "aiding and abetting" defendants' activities. R&C's complaint states that R&C had "not received a response indicating that [Name.com] will voluntarily disable access" to rylee-cru.com by the time the complaint was filed. Docket No. 1 at 4. R&C's TRO motion similarly states only that it contacted Name.com, but "has received no response indicating that [rylee-cru.com] will be taken down." Docket No. 2 at 2.

---

[3] By contrast, the Tenth Circuit has affirmed injunctions against nonparties under Rule 65 when the nonparties were actively involved in defendants' unlawful activities. *See Reliance Ins. Co. v. Mast Const. Co.,* 84 F.3d 372, 377 (10th Cir. 1996); *Lundahl v. Global E. LLC*, 643 F. App'x 752, 753 (10th Cir. 2016) (unpublished).

Because R&C has alleged only inactivity on the part of Name.com, the Court finds that it may not bind the registrar to the terms of the TRO order under Rule 65(d)(2)(C).

### B. Removing the Website and Refraining From Creating New Ones

R&C asks the Court to order defendant Hui and Name.com to "takedown [sic] and render inaccessible the site at www.rylee-cru.com, leaving it an unresolved page" and to order defendant Hui not to "register, use, or post content to any domain name containing the phrase "Rylee Cru" or any variation of that phrase." Docket No. 2-3 at 1-2. As discussed above, R&C has shown entitlement to a temporary restraining order on its trademark and copyright claims against defendant Hui concerning www.rylee-cru.com. However, as discussed above, R&C has failed to show that the Court has authority under Rule 65(d)(2) to enjoin nonparty registrars or persons who are not shown to have aided and abetted defendants.

### C. Transfer of Domain

R&C asks the Court to order defendant Hui and Name.com to transfer the domain rylee-cru.com to R&C or its authorized representative and to do the same for any additional infringing sites that are identified in the future. *Id*. To support this request, R&C points the Court to a temporary restraining order issued by the District of Arizona ordering a registrar to lock the infringing domain and transfer it to the plaintiff. Docket No. 2-2. However, as discussed above, R&C has failed to show that the Court has authority under Rule 65(d)(2) to enjoin a nonparty registrar. The Court will not order the registrar to transfer the domain.

Furthermore, "preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits" are disfavored. *O Centro*

*Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 546 U.S. 418 (2006). Transferring ownership of the domain name from defendant Hui to R&C would provide a disfavored form of relief. Accordingly, the Court declines to do so at this stage of the proceedings.

### D.  Registration Information and Additional Domain Names

R&C asks the Court to order defendants to "provide any additional contact information relating to the registrant of www.rylee-cru.com, including any additional contact information relating to the individual Defendant named Hui Zhu" and to "identify any additional domain names containing the terms 'Rylee' and 'Cru' and registered under their control." Docket No. 2-3 at 1-2. R&C should request the disclosure of this information at the discovery stage rather than as part of its motion for a TRO. It is not material to the issue before the Court, whether to issue a TRO.

### E.  Service by Email

R&C asks the Court to authorize service on defendants, including service of the summons and complaint, by email. Docket No. 2-3 at 2. This issue is properly raised in connection with the preliminary injunction proceedings. The Court will not resolve it now.

### V.  SECURITY

Under Fed. R. Civ. P. 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A trial court has "wide discretion under Rule

65(c) in determining whether to require security." *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (internal quotations omitted).  R&C argues that it should be required to provide a minimal bond, if any, because it is likely to prevail on the merits and the actions of defendants "broadly jeopardize[] the public's confidence in intellectual property rights."  Docket No. 2 at 21-22.

      Courts have held that a high likelihood of success on the merits and evidence of bad faith or fraud weighs in favor of a minimal bond or no bond at all in this type of case.  *See, e.g., Starcom Mediavest Group, Inc. v. Mediavestw.com*, 2010 WL 3564845, at *1 (N.D. Cal. Sep. 13, 2010) (declining to require a bond in a cybersquatting case where there was a high likelihood of success on the merits and defendant's activities "evinced fraudulent intent and bad faith") (citing *California ex. Rel. Van De Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319, 1326 (9th Cir. 1985)).  Here, the Court finds that R&C has demonstrated a high likelihood of success on the merits and that defendants' activities, as alleged in the complaint and the application for a temporary restraining order, establish fraudulent intent and bad faith.  In consideration of these factors, the Court will require R&C to post a minimal bond in the amount of $5,000.

## VI. CONCLUSION

      Based on these findings, it is

      **ORDERED** that the portion of Plaintiff Rylee and Cru, Inc.'s *Ex Parte* Application for Temporary Restraining Order and OSC Re Preliminary Injunction [Docket No. 2] that seeks a temporary restraining order is **GRANTED**.  It is further

**ORDERED** that defendant Hui Zhu shall cause www.rylee-cru.com to be disabled, taken down, and removed from Name.com or any other domain registrar.  It is further

**ORDERED** that defendant Hui shall not operate or maintain www.rylee-cru.com, and shall not use that website to advertise, promote, offer to sell, sell, distribute, or transfer any products depicted therein.  It is further

**ORDERED** that R&C shall post a bond or cash deposit with the Clerk of the Court in the amount of $5,000 no later than **January 26, 2023**.  It is further

**ORDERED** that this order shall expire at **12:00 p.m.** on **February 6, 2023.**  It is further

**ORDERED** that the Court will hold a preliminary injunction hearing at **9:00 a.m.** on **Monday, January 30, 2023** for two hours in Courtroom A701 before Chief Judge Philip A. Brimmer.

DATED January 23, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

15